*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PARZ GROUP, INC., PARZ GROUP
DEVELOPMENT, INC., LINDA
PARZUCHOWSKI, and CONAN
PARZUCHOWSKI,

        Plaintiffs/Counterdefendants-
        Appellees,

v

CITY OF LIVONIA and TODD ZILINCIK, also
known as TODD ZILINICK,

        Defendants-Appellants,
and

RONALD PARZUCHOWSKI,

        Third-Party Defendant.

UNPUBLISHED
June 10, 2021

No. 352803
Wayne Circuit Court
LC No. 18-013575-CH

PARZ GROUP, INC., PARZ GROUP
DEVELOPMENT, INC., LINDA
PARZUCHOWSKI, and CONAN
PARZUCHOWSKI,

        Plaintiffs/Counterdefendants-
        Appellees,

v

CITY OF LIVONIA,

        Defendant/Counterplaintiff/Third-
        Party Plaintiff-Appellant,
and

No. 352898
Wayne Circuit Court
LC No. 18-013575-CH

-1-

TODD ZILINCIK, also known as TODD ZILINICK,

        Defendant-Appellant,

and

RONALD PARZUCHOWSKI,

        Third-Party Defendant.

Before: REDFORD, P.J., and BORRELLO and TUKEL, JJ.

PER CURIAM.

In these consolidated appeals,[1] in Docket No. 352803, defendants, City of Livonia and Todd Zilincik, appeal as of right the trial court's order granting in part and denying in part defendants' motion for summary disposition on the issue of governmental immunity, and in Docket No. 352898, defendants appeal by leave granted[2] the same order on the issue whether the trial court abused its discretion when it granted summary disposition in favor of plaintiffs, Parz Group, Inc., Parz Group Development, Inc., Linda Parzuchowski, and Conan Parzuchowski, on their claim for mandamus. For the reasons set forth below, we affirm.

## I. BACKGROUND

This case stems from a dispute over a site condominium development in Livonia, Michigan. On September 15, 2004, the Livonia City Council (City Council) approved plaintiffs' site plan to construct a multiunit condominium on 35300 Joy Road. As one of the conditions of approval, the City Council required that plaintiffs "secure the necessary storm water management permits from Wayne County, the City of Livonia, and/or the State of Michigan."

In 2005, John Podina, an inspector with Livonia's Inspection Department, wrote to plaintiffs that Livonia had approved the installation of the sewer system. Plaintiffs later obtained a permit for the work from Wayne County on October 5, 2005. The Wayne County permit stated that the permit, which included a $10,000 cash bond, would not be released until "the City of Livonia executed maintenance resolution has been received by the permit office and the storm water management ordinance certificate of compliance."

---

[1] *Parz Group, Inc v Livonia*, unpublished order of the Court of Appeals, entered August 4, 2020 (Docket Nos. 352803 and 352898).

[2] *Parz Group, Inc v Livonia*, unpublished order of the Court of Appeals, entered August 4, 2020 (Docket No. 352898).

On December 9, 2005, John P. Hill, Livonia's Assistant City Engineer, wrote to plaintiffs regarding the sewer maintenance system installation:

> I have walked the referenced property on Thursday, December 8, 2005 and have inspected the underground work for final approval. The city hereby accepts the sanitary sewer, storm sewer and water main. The final storm sewer system issues of reconstructing an inlet and the grouting of the rip-rap have been completed to the City's satisfaction.
>
> This approval in no way implies approval by any other government agency, such as Wayne County that may have additional requirements for the storm sewer system.

Wayne County sent plaintiffs a letter on February 15, 2006, informing them that "all work under th[e] permit has been completed" with two exceptions. First, plaintiffs were required to complete work on a county right-of-way frontage entrance. Second, plaintiffs were required to complete "[s]torm water management."

On April 19, 2013, Zilincik, Jack Kirksey (the Mayor), and Kevin Maillard (the Director of Public Works), submitted a set of recommendations to the City Council regarding sewage maintenance at the condominiums. The memorandum stated that Livonia's Engineering Department recommended the City Council "[a]dvise the Wayne County Department of Public Services (Permit Section) that the City of Livonia has approved the storm sewer plans . . . ." The Department also recommended that Livonia "accept jurisdiction and maintenance" over the sewer, authorize the City Engineer to "execute the Wayne County Permit," and authorize the Mayor to "execute the maintenance agreement . . . ."

The City Council acted on the request from Livonia's Engineering Department on June 3, 2013. In continuing resolution #169-13, the City Council approved the following:

> RESOLVED, that having considered the report and recommendation of the City Engineer, dated April 19, 2013, approved by the Director of Public Works and approved for submission by the Mayor, with regard to a request from the Wayne County Department of Public Services that the City take jurisdiction and control of the entire on-site storm sewer collection system as part of the development of the property located on the north side of Joy Road, west of Wayne Road in the Southwest 1/4 of Section 33, the Council does hereby determine as follows[:]
>
> 1[.] To advise the Wayne County Department of Public Services (Permit Section) that the City of Livonia has approved the storm sewer site plans and further, that the City will accept jurisdiction and maintenance (at no expense to the County) of the storm sewer within the property located on the north side of Joy Road, west of Wayne Road in the Southwest 1/4 of Section 33 (See attached maintenance agreement from the owner, Parz-Saville Row Site Condominiums, 24400 Ford Road, Dearborn Heights, Michigan 48124, indicating their willingness to reimburse the City for any such maintenance that may become necessary),

2[.] To authorize the City Engineer to execute a Wayne County permit on behalf of the City of Livonia in connection with the above storm sewer construction, and

3[.] To authorize the Mayor and City Clerk to execute the maintenance agreement on behalf of the City[.]

A dispute arose between Zilincik, the City Engineer, and Ronald Parzuchowski over the party responsible for cleaning the sewers before execution of the storm water maintenance agreement (SWMA). On June 13, 2013, Zilincik wrote to Ronald: "In order for me to execute the storm water agreement with Wayne County, I need Parz-Saville Row Site Condominiums to have the storm pipes jetted and cleaned with the sumps vactored out." Ronald responded that any cost of cleaning of the sewer should be borne by the condominium association, and not plaintiffs. Ronald asserted that in a later conversation Zilincik told him that he better "get with the program" or plaintiffs' $10,000 bond would not be returned. Ronald explained that after his conversation with Zilincik about the cleaning of the storm sewers, Zilincik "refused to execute the Storm Water Maintenance Agreement and submit it to Wayne County . . . ." Ronald stated that, in 2015, he became involved in a conflict with Alex Bishop, then Livonia's Building Director, regarding golf league rules and events which bled into the dispute with defendants over the execution of the SWMA.

By 2016, five units out of seven under the project's site plan were completed. Ronald had reached an agreement with Michael Soave, a "developer," to sell to Soave "the remaining property in the Condominium Project for $55,000 per unit, for a total of $110,000." However, according to Ronald, Soave backed out of the deal "after City of Livonia employees informed [Soave] that, if he decided to move forward with the purchase, he would be mandated to post a $30,000 bond for 'landscaping' and 'street lighting.' " Ronald claimed the same occurred in 2017 after another potential buyer backed out after being told a $30,000 bond would be required. Plaintiffs contended that the approved site plan did not require street lighting.

Zilincik stated that he would not complete any inspections on the two lots Ronald wanted to sell until the bond was posted or the street lights were installed. Zilincik admitted, however, that he did not have authority to unilaterally impose a bond, but could only request such a bond requirement from City Council. In September 2016, defendants installed a street light in front of the condominiums and forfeited plaintiffs' bond money for the expense.

Plaintiffs filed suit asserting claims for mandamus, declaratory relief, and tortious interference with a business expectancy. Defendants moved for summary disposition under MCR 2.116(C)(7), MCR 2.118(C)(8), and MCR 2.116(C)(10). After a hearing, the trial court granted in part and denied in part defendants' motion. The trial court granted summary disposition in defendants' favor as to Livonia's claim of governmental immunity, but denied summary disposition on the same issue respecting Zilincik. The trial court also granted plaintiffs summary disposition under MCR 2.116(I)(2) respecting their request for writ of mandamus. These appeals followed.

## II. STANDARD OF REVIEW

In the trial court, defendants moved for summary disposition under MCR 2.116(C)(7), MCR 2.116(C)(8), and MCR 2.116(C)(10).[3] We "review de novo a trial court's decision to grant or deny a motion for summary disposition under MCR 2.116(C)(7)." *Galea v FCA US LLC*, 323 Mich App 360, 368; 917 NW2d 694 (2018). "A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence." *Id*. (quotation marks and citation omitted). "However, a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Id*. (quotation marks and citation omitted).

We review de novo a trial court's decision on a motion brought under MCR 2.116(C)(8). *Dell v Citizens Ins Co of America*, 312 Mich App 734, 739; 880 NW2d 280 (2015).

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When deciding a motion brought under this section, a court considers only the pleadings. [*Id*. at 739-740.]

We "review a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "Summary disposition is appropriate . . . if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

We review de novo the issue whether an individual is entitled to qualified immunity. *Thomas v McGinnis*, 239 Mich App 636, 644; 609 NW2d 222 (2000). We review for an abuse of discretion a trial court's decision on whether to grant a writ of mandamus. *Citizens Protecting Michigan's Constitution v Secretary of State*, 503 Mich 42, 59; 921 NW2d 247 (2018). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Ickes v Korte*, 331 Mich App 436, 440; 951 NW2d 699 (2020). "To the extent that a

---

[3] The trial court did not specify under which subrule it considered each of defendants' arguments. However, defendants moved for summary disposition of the tort claims on the basis of immunity, which is addressed in MCR 2.116(C)(7). Moreover, given the fact that the trial court considered documentary evidence outside of the pleadings, this Court will construe the trial court's decision regarding mandamus as having been decided under MCR 2.116(C)(10). See *Johnson v Heite*, 243 Mich App 578, 584-585; 624 NW2d 738 (2000) (stating that the failure to identify a particular subrule in regard to summary disposition at the trial court does not preclude appellate review as long as the reviewing court has a sufficient record to rule properly).

request for a writ of mandamus involves questions of law, we review them de novo." *Citizens Protecting Michigan's Constitution*, 503 Mich at 59.

## III. ANALYSIS

Defendants first argue the trial court erred when it denied their motion for summary disposition on the issue of qualified immunity. We disagree.

In *Odom v Wayne Co*, 482 Mich 459, 479-480; 760 NW2d 217 (2008), our Supreme Court set forth the test to be used when an individual raises a defense of governmental immunity to an intentional tort:

> To summarize and simplify the application of our decision, we provide these steps to follow when a defendant raises the affirmative defense of individual governmental immunity. The court must do the following:
>
> (1) Determine whether the individual is a judge, a legislator, or the highest-ranking appointed executive official at any level of government who is entitled to absolute immunity under MCL 691.1407(5).
>
> (2) If the individual is a lower-ranking governmental employee or official, determine whether the plaintiff pleaded an intentional or a negligent tort.
>
> (3) If the plaintiff pleaded a negligent tort, proceed under MCL 691.1407(2) and determine if the individual caused an injury or damage while acting in the course of employment or service or on behalf of his governmental employer and whether:
>
> (a) the individual was acting or reasonably believed that he was acting within the scope of his authority,
>
> (b) the governmental agency was engaged in the exercise or discharge of a governmental function, and
>
> (c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage.
>
> (4) If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity under the *Ross* [*v Consumers Power Co*, 420 Mich 567; 363 NW2d 641 (1984)] test by showing the following:
>
> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

-6-

(b)  the acts were undertaken in good faith, or were not undertaken with malice, and

(c)  the acts were discretionary, as opposed to ministerial.

Based on the record before the trial court, the trial court did not err when it concluded that issues of fact precluded a determination—at the summary disposition stage—whether Zilincik qualified for governmental immunity under *Odom*.  Plaintiffs pleaded that Zilincik intentionally tortiously interfered with their business expectancies, thus triggering analysis under subpart (4) of *Odom*.  Defendants were unable to establish that no genuine issue of material fact existed under each of the elements.

First, defendants failed to present undisputed facts that Zilincik acted, or reasonably believed he was acting, within the scope of his authority.  Although defendants claim that Zilincik acted within the scope of his authority when he refused to sign the SWMA and imposed—or at least attempted to impose—certain bond conditions on plaintiffs, he admitted that only the City Council could approve the imposition of a bond upon plaintiffs.  Zilincik also attempted to convince the City Council to rescind the continuing resolution passed in 2013, which would be unnecessary if he had the sole discretion to withhold execution of the SWMA.

Second, defendants also failed to present undisputed facts respecting whether Zilincik acted in good faith.  Plaintiffs presented evidence that Zilincik told Ronald that he needed to "get with the program" or risk forfeiting the $10,000 bond.  When construed in the light most favorable to plaintiffs, this statement by Zilincik suggested personal animus against Ronald.  Thus, the issue whether Zilincik acted in good faith remained in dispute and summary disposition would have been improper.

Third, defendants failed to show that the acts at issue—the imposition of bonds and withholding of signatures—were discretionary acts as opposed to ministerial.  The record reflects that Zilincik admitted that he did not have the discretion to require bonds; that power resided in the City Council.  Further, the trial court determined, when granting mandamus to plaintiffs, that execution of the SWMA was not a discretionary act.  The trial court determined the ministerial nature of defendants' signature from the continuing resolution passed by the City Council in which Livonia took jurisdiction over the storm sewer system.  No conditions or further requirements of any sort were imposed by the City Council regarding signing the SWMA.  To enable the process of taking jurisdiction, a clear step taken by the City Council, defendants were required to sign the SWMA.  Given the City Council's adoption of the continuing resolution, defendants were required to sign the SWMA, so the trial court properly determined that the act of signing was ministerial.[4]  Nonetheless, the trial court properly concluded that fact issues precluded summary disposition in Zilincik's favor on the issue whether he had qualified governmental immunity.

---

[4] We discuss the ministerial nature of defendants' act of signing the SWMA in greater detail below.

Next, defendants argue the trial court abused its discretion when it granted summary disposition in plaintiffs' favor respecting their request for mandamus. According to defendants, the acts at issue were not ministerial, thus defeating any claim for mandamus. We disagree.

A writ of mandamus is an "extraordinary remedy." *Citizens for Protection of Marriage v Bd of State Canvassers*, 263 Mich App 487, 492; 688 NW2d 538 (2004). The purpose of a writ of mandamus is to compel action by a public official. *Attorney General v Bd of State Canvassers*, 318 Mich App 242, 248; 896 NW2d 485 (2016). A writ of mandamus is proper if the party seeking the writ meets the following requirements:

> (1) the party seeking the writ has a clear legal right to performance of the specific duty sought, (2) the defendant has the clear legal duty to perform the act requested, (3) the act is ministerial, and (4) no other remedy exists that might achieve the same result. [*Id*. (citation omitted).]

The party seeking the writ of mandamus has the burden to demonstrate entitlement to it. *Id*. at 249.

In the trial court, the parties' arguments focused on the second and third elements of mandamus: whether defendants had a clear legal duty to perform a ministerial act. A clear legal duty is a statutory obligation imposed on a public official to perform a specific act. *Casco Twp v Secretary of State*, 472 Mich 566, 577; 701 NW2d 102 (2005); *People v Parlovecchio*, 319 Mich App 237, 242; 900 NW2d 356 (2017) ("[T]he legal duty cannot rest solely on a contractual obligation."). "A ministerial act is one in which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 58 n 11; 832 NW2d 728 (2013) (quotation marks and citation omitted).

The trial court concluded that once the City Council passed the continuing resolution, defendants' signatures on the SWMA became ministerial, and defendants had no discretion whether to sign the agreement. The trial court did not abuse its discretion when coming to this conclusion.

In the continuing resolution passed by the City Council, it accepted the recommendation from defendants that it take jurisdiction and authorize the execution of the SWMA. Defendants claim the continuing resolution did not require that they sign the SWMA without condition because the continuing resolution merely "authorized" them to sign the agreement and did not order them to sign it. They assert that the word "authorize" did not mean that they were ordered to act but gave them unilateral discretion to impose additional conditions, such as the cleaning of the storm water system, and the power to withhold execution of the SWMA, apparently for as long as they felt. This argument lacks merit.

The City Council expressed its political will to accept jurisdiction and maintenance over the storm sewer system in 2005. In its continuing resolution, it further expressed its will by communicating that fact to Wayne County, thereby triggering concomitant responsibilities on the part of defendants to carry out the City's will. Defendants needed to execute a permit with Wayne County and sign the SWMA on Livonia's behalf. The City Council plainly expressed its intent and signified that nothing more needed to be done than the ministerial act of placing signatures on

the SWMA.  The continuing resolution neither expressly nor impliedly suggested that defendants had discretionary authority to withhold signing unless additional conditions were met.  The trial court did not err by concluding that the resolution did not lend itself to the sophistry advanced by defendants.  Nor did the trial court err by concluding that the continuing resolution created a legal duty for defendants to sign the SWMA, which constituted a ministerial act.  Plaintiffs, therefore, were entitled to summary disposition on their mandamus claim.

Affirmed.

/s/ James Robert Redford
/s/ Stephen L. Borrello
/s/ Jonathan Tukel